# United States Court of Appeals
## For the First Circuit

---

Nos. 00-1834
　　　00-1835

DONAL B. BARRETT,

Plaintiff, Appellant,

v.

VICTOR J. LOMBARDI, JR., ET AL.,

Defendants, Appellees.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

---

Before

Selya, Circuit Judge,

Cyr, Senior Circuit Judge,

and Boudin, Circuit Judge.

---

W.P. Colin Smith, Jr. for appellant.
　　Alan R. Curhan, with whom Burns & Levinson and Gadsby
Hannah, LLP were on brief, for appellees.

---

January 17, 2001

---

**SELYA, Circuit Judge.** Smarting from the sting of a failed business relationship, plaintiff-appellant Donal B. Barrett sued his erstwhile co-venturer, Victor J. Lombardi, Jr., and one of Lombardi's companies, Veritas Offshore, Ltd. (Veritas). Acting on the defendants' joint dispositive motion, the district court determined (1) that it lacked in personam jurisdiction over Veritas, and (2) that, for jurisdictional and other reasons, the complaint stated no claim against Lombardi upon which relief could be granted. Barrett appeals from the order of dismissal. We affirm in part and reverse in part.

## I.  BACKGROUND

In order to place these appeals into perspective, we recount the facts as alleged by the appellant in the operative pleading (the first amended complaint), as supplemented by his affidavit in opposition to the joint motion to dismiss.

In November 1995, the appellant and Edward Dyman organized NetFax, Inc., a Delaware corporation, for the purpose of developing and commercially exploiting new technologies for Internet facsimile transmission conceived by Frederick Murphy (Dyman's brother-in-law). Murphy himself soon joined the enterprise. The company established a base of operations in Cambridge, Massachusetts, and installed the appellant as its chairman. All the "founder's stock" stood in Dyman's name

-3-

(although the appellant maintains that Dyman held the shares as his nominee).

In short order, Lombardi tried to insinuate himself into the business, touting his expertise and connections. Gulled by Lombardi's rodomontade and eager to bring him into the fold, the appellant directed Dyman to transfer a substantial number of NetFax shares to Veritas. These transfers occurred in March 1996 and periodically thereafter, involving an aggregate of 4,046,666 shares (about 30% of the founder's stock). In the same general time frame, Dyman also transferred substantial amounts of stock to the appellant and to Murphy, retaining only a token amount for himself.

The marriage did not go well. In time, disputes over how to manage the affairs of the fledgling company led to the appellant's ouster as NetFax's chairman. Lombardi took his place. That change in command culminated in the execution of a separation agreement (the Agreement), dated July 31, 1998. In the Agreement, Lombardi promised, among other things, to grant the appellant a warrant, expiring July 31, 2000, for the purchase of 1,000,000 shares of NetFax stock at a price of $0.001 per share. The appellant never received the warrant.

Lombardi's ascension to the throne failed to improve NetFax's fortunes and the company suspended operations in

September 1998. Six months later, the appellant went to court. Invoking diversity jurisdiction, 28 U.S.C. § 1332(a), he filed suit against Lombardi and Veritas in the United States District Court for the District of Massachusetts.

The appellant's first amended complaint contains five statements of claim. The first four charge federal securities fraud, deceptive trade practices, common law deceit, and common law misrepresentation, respectively. All of these counts derive from falsehoods attributed to Lombardi, including exaggerations about his supposed expertise and his failure to disclose his checkered financial past (a history that, as the appellant belatedly learned, involved a number of questionable stock deals and a personal bankruptcy). The fifth statement of claim, sounding in contract, concerns Lombardi's refusal to deliver the warrant.

The defendants denied the material averments of the complaint and, in due course, filed a motion to dismiss. The district court determined that it lacked <u>in</u> <u>personam</u> jurisdiction over Veritas; that, in all events, the appellant's first four counts were vulnerable because he was not the real party in interest (Dyman, after all, had transferred the shares); and that those counts also failed because of an insufficient showing of damages. These determinations left

standing only the breach of contract claim (count five).  As to that cause of action, the court focused on the price to be paid for the underlying stock — 1,000,000 shares at $0.001 per share — and, by a process of simple multiplication, ascertained that the dispute involved only $1,000.  Starting from that premise, the court ruled that it lacked subject-matter jurisdiction by reason of an inadequate amount in controversy.

Having disposed of all the appellant's claims, the court granted the motion to dismiss and entered judgment in the defendants' favor.  The appellant then moved unsuccessfully for relief from the judgment.  The district court denied that motion out of hand.  These appeals — one taken upon the initial entry of judgment and the second upon the denial of reconsideration — followed.

## II.  CLAIMS AGAINST VERITAS

In our view, efficient resolution of the claims against Veritas does not require us to go beyond the district court's determination that it lacked <u>in personam</u> jurisdiction over that defendant.  We confine our discussion accordingly.

### A.  **The Motion to Dismiss**.

Veritas is a foreign corporation headquartered in the Cayman Islands.  Since there is no evidence that it regularly conducts business in Massachusetts, the appellant must establish

a basis for the exercise of specific jurisdiction.  See Donatelli v. Nat'l Hockey League, 893 F.2d 459, 462-63 (1st Cir. 1990) (elucidating concepts of "general" and "specific" personal jurisdiction, and distinguishing between them).  To achieve this goal, the appellant must present sufficient facts to satisfy two cornerstone conditions:  "first, that the forum in which the federal district court sits has a long-arm statute that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution."  Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994).  In this case, then, the appellant cannot hale Veritas into the district court unless he can satisfy the rigors of both the Massachusetts long-arm statute and the United States Constitution.

Compliance with the state standard for personal jurisdiction necessitates a showing that the cause of action arises from the defendant's "transacting any business" in Massachusetts, Mass. Gen. Laws ch. 223A, § 3(a), or from a tortious in-state "act or omission," id. § 3(c).  Compliance with the federal constitutional standard involves a somewhat more extensive showing.  That showing has three aspects:

> First, the claim underlying the litigation
> must directly arise out of, or relate to,
> the defendant's forum-state activities.
> Second, the defendant's in-state contacts

-7-

must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992).

We have developed a taxonomy that provides a variable set of guidelines, each corresponding to a particular level of analysis, for use when a trial court adjudicates a motion to dismiss for want of personal jurisdiction. See Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145-47 (1st Cir. 1995); Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 674-78 (1st Cir. 1992). The most conventional of these methods — and the one that applies here — authorizes the district court to restrict its inquiry to whether the plaintiff has proffered evidence which, if credited, suffices to support a finding of personal jurisdiction. Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83-84 (1st Cir. 1997); Foster-Miller, 46 F.3d at 145.

To make this prima facie showing, the plaintiff cannot rest upon mere averments, but must adduce competent evidence of specific facts. Foster-Miller, 46 F.3d at 145; Boit, 967 F.2d at 675. When he does so, the court must accept the proffer at face value. Foster-Miller, 46 F.3d at 145. Determining the

-8-

adequacy of this prima facie jurisdictional showing is a quintessentially legal determination — a determination which, on appeal, engenders de novo review.  Rodriguez, 115 F.3d at 84.

In the circumstances at bar, the district court correctly found the appellant's proffer wanting.  The appellant failed even to allege — let alone offer competent proof — that Veritas had conducted any business in Massachusetts or that it had any significant ties to the state.  Indeed, the appellant's only mention of Veritas in either his amended complaint or in his affidavit in opposition to the motion to dismiss indicated that Veritas was the transferee and holder of the NetFax shares, and that he believed it to be owned and managed by Lombardi. The mere acceptance of shares transferred from within the forum state, without more, does not constitute a minimum contact sufficient to subject a foreign corporation to jurisdiction in that state's courts.  E.g., Shaffer v. Heitner, 433 U.S. 186, 216 (1977).  Nor will the fact that the transferee is beneficially owned or controlled by a person or entity who does business in the forum state suffice to tip the jurisdictional balance.  See Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984) ("[N]or does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary."); Cent. States, S.E. & S.W. Areas Pension

Fund v. Reimer Express World Corp., 230 F.3d 934, 944 (7th Cir. 2000) (similar).

In the face of these powerful precedents, the appellant attempts to bolster his position by noting that his opposition to the motion to dismiss portrayed Lombardi as an agent of Veritas (so that business transacted by Lombardi in Massachusetts could be attributed to Veritas). This attempt fizzles. In order to defeat a motion to dismiss for want of in personam jurisdiction, a plaintiff must do more than simply surmise the existence of a favorable factual scenario; he must verify the facts alleged through materials of evidentiary quality. See Foster-Miller, 46 F.3d at 145; Boit, 967 F.2d at 675. Thus, allegations in a lawyer's brief or legal memorandum are insufficient, even under the relatively relaxed prima facie standard, to establish jurisdictional facts. Cf. Fragoso v. Lopez, 991 F.2d 878, 887 (1st Cir. 1993) (explaining that statements in a brief are not adequate to forestall summary judgment); Kelly v. United States, 924 F.2d 355, 357 (1st Cir. 1991) (similar).

That ends this aspect of the matter. Because the appellant placed insufficient facts before the district court to satisfy the minimum requirements for the exercise of personal

jurisdiction, the court appropriately granted Veritas's motion to dismiss.

### B. **The Motion for Relief from Judgment.**

Following the district court's order of dismissal, the appellant moved for relief from judgment.[1] He submitted with the motion a new affidavit asserting that Veritas was subject to in personam jurisdiction in Massachusetts because it functioned as Lombardi's "alter ego." The appellant posits that this neoteric submission bridged the jurisdictional gap, and that the district court therefore should have vacated its order of dismissal. He is wrong.

A motion for relief from judgment cannot be used merely to reargue a point already decided. See Cody, Inc. v. Town of Woodbury, 179 F.3d 52, 56 (2d Cir. 1999); Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir. 1996). Given the lack of exceptional circumstances justifying extraordinary relief under subsection (6) of Rule 60(b), Ahmed v. Rosenblatt, 118

---

[1]To be precise, the appellant filed a motion seeking (1) "reconsideration of the [district] court's judgment dated February 23, 2000," or (2) "to alter or amend [that] judgment," or (3) "reconsideration under Rule 60(b)." We do not spend any time on the first two options. After all, new matters cannot be asserted as of right on a motion for reconsideration, Appeal of Sun Pipe Line Co., 831 F.2d 22, 25 (1st Cir. 1987), and the ten-day window for filing motions to alter or amend, Fed. R. Civ. P. 59(e), had closed by the time that the appellant filed his motion. Accordingly, we treat the appellant's motion, favorably to him, as one filed under Rule 60(b).

F.3d 886, 891 (1st Cir. 1997), the appellant's cryptic motion in this case necessarily invoked subsection (1) of Rule 60(b). That subsection permits a court to relieve a party from a final judgment on the ground of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The second affidavit, however, includes nothing that indicates why the information that it contains was omitted from the appellant's first affidavit. This brings the appellant's case within the ambit of our holding in Mas Marques v. Digital Equipment Corp., 637 F.2d 24 (1st Cir. 1980).

In Mas Marques, as here, the plaintiff filed a motion and affidavit after the entry of judgment. Id. at 28. There, as here, the late affidavit contained no explanation for the plaintiff's failure to submit the critical information to the court at an earlier date. Id. at 29. There, as here, the plaintiff made no assertion that further facts became known to him only after judgment had been entered. Id. Given those omissions, the district court concluded that the tardy affidavit did not warrant relief under Rule 60(b). We agreed, stating:

> In these circumstances, particularly where [the plaintiff] should have been aware of the deficiencies in his case before the entry of judgment, relief under Rule 60(b) would not have been justified. . . . A defeated litigant cannot set aside a judgment . . . because he failed to present on a motion for summary judgment all of the

-12-

> facts known to him that might have been useful to the court.

Id. at 29-30 (citations, internal quotation marks, and emphasis omitted).

Mas Marques controls here. Because the appellant has given no acceptable reason for the delay in presenting the second affidavit to the district court, we cannot say that the court abused its discretion in refusing to reopen the jurisdictional question. See 12 James Wm. Moore et al., Moore's Federal Practice ¶ 60.41[1][c][ii] (3d ed. 1999) ("Courts repeatedly deny relief when they find that the facts and circumstances demonstrate a lack of diligence in pursuing . . . litigation.").

The appellant strives to avoid this result in two ways. First, he asks for leniency on the basis that he originally filed suit pro se. This request seems disingenuous. While pro se litigants sometimes are accorded a measure of latitude in procedural matters, e.g., Instituto de Educacion Universal Corp. v. United States Dep't of Educ., 209 F.3d 18, 23 (1st Cir. 2000), no such latitude is warranted where, as here, the unrepresented party is himself a lawyer.[2] Godlove v. Bamberger,

_____

[2]The appellant is a Harvard-trained attorney admitted to the bars of New York, Massachusetts, and the District of Columbia. He has practiced securities law for some thirty-five years.

Foreman, Oswald & Hahn, 903 F.2d 1145, 1148 (7th Cir. 1990). And at any rate, by the time the motion to dismiss was argued, the appellant had retained counsel who appeared on his behalf. Under the circumstances, the appellant is not entitled to any special solicitude.

The appellant's second initiative consists of a plea, made in his Rule 60(b) motion, that the district court ought not to have dismissed the complaint without affording him the opportunity to conduct discovery about Veritas and its business activities. This plea lacks merit. If a party needs jurisdictional discovery, that party has an obligation to request it in a timely manner. Rodriguez, 115 F.3d at 86; Whittaker Corp. v. United Aircraft Corp., 482 F.2d 1079, 1086 (1st Cir. 1973). The appellant failed to fulfill this obligation: to the contrary, he did not seek additional discovery at any time prior to the entry of an adverse judgment. This was plainly too late.[3] See Rodriguez, 115 F.3d at 86.

---

[3]The appellant's dilatoriness is all the more striking because ample opportunity for discovery existed prior to the lower court's ruling. The original complaint was filed by the plaintiff on March 29, 1999; the defendants' joint motion was filed on September 9, 1999; and the district court rendered its decision on February 23, 2000.

Consequently, we cannot fault the district court for denying the motion for relief from judgment.[4]

## III.  THE CLAIMS AGAINST LOMBARDI

Our conclusion that the district court lacked jurisdiction over Veritas, see supra Part II, impacts the appellant's other claims as well.  That holding leaves Lombardi as the sole defendant.  Personal jurisdiction over him is not a problem.  The district court found, preliminarily, that it had such jurisdiction, and Lombardi does not now contest that finding.  We return, then, to the claims limned in the amended complaint.

### A.  The First Four Counts.

As to the first four counts of the amended complaint, the appellant has thus far sought rescission — and only rescission — as a remedy.  The district court highlighted this narrow focus, observing that these counts "contain[] no explicit statement of harm or loss."  The appellant's brief on appeal likewise emphasizes this focus, and his counsel twice reaffirmed at oral argument in this court that rescission was the goal of

---

[4]Given this holding, we need not evaluate whether the additional facts contained in the second affidavit, if seasonably placed before the court, would have made a dispositive difference on the jurisdictional question.  We do note, however, that the contents of that affidavit appear more conclusory than factual.

the first four counts.  Finally, the appellant presented no developed argumentation in support of a claim for money damages in either the district court or this court.[5]  Thus, no claim for money damages is properly in the case at this juncture.  See Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988) (discussing pleader's obligation to allege "each material element necessary to sustain recovery").

Nor are the first four counts viable in respect to the prayer for rescission.  When a party seeks to rescind a contract for the transfer of property, a court ordinarily can enforce rescission only as between the party who surrendered the property (or persons claiming by, through, or under that party) and the party who holds the property.  Here, Dyman (who delivered the disputed stock) is not a party, and Veritas (which now holds the stock) is not properly before the court.  To cinch matters, none of the counts in question either state facts sufficient to place the appellant in Dyman's shoes or delineate any theory under which rescission might be ordered in the

---

[5]Although the prayer for relief inscribed at the tail end of the amended complaint made a passing reference to money damages regarding one of the four counts, the appellant did not pursue this vague allusion either here or below.  Consequently, the averment lacks the capacity to transform the character of the first four counts.  See Aulson v. Blanchard, 83 F.3d 1, 7 (1st Cir. 1996) (deeming waived an allegation made by the plaintiff in the trial court but not thereafter pressed).

absence of both the transferor and the transferee.[6] Consequently, the district court's decision to dismiss the first four counts of the amended complaint in their entirety passes muster.

Before leaving this topic, we hasten to add an acknowledgment that, even without Dyman and Veritas in the case, some claim theoretically might lie on the appellant's behalf within the framework of the first four counts of the amended complaint. Thus, we do not foreclose the possibility that, on remand, the district court, in its discretion, might yet permit the complaint to be further amended. We do not pursue the point for we must deal with matters as they were when the trial court ruled, not with matters as they might become.

### B.  Count Five.

Count five is a different kettle of fish. That count embodies a claim for specific performance of the warrant provision of the Agreement executed in connection with the appellant's removal as NetFax's guiding light. The pertinent provision states that Lombardi "shall grant to Mr. Barrett a warrant to acquire One Million (1,000,000) shares of [NetFax's]

---

[6]Indeed, the appellant apparently recognizes this shortcoming. See Appellant's Brief at 32 (indicating that "Veritas has to be before the Court" in order to effectuate rescission).

common stock . . . at an exercise price of $.001 per share." The appellant alleges that Lombardi never delivered the warrant and seeks specific performance of this covenant.

The district court ruled that it did not have subject-matter jurisdiction over this count because "the total contract price is $1,000," and "that amount . . . clearly falls short of the $75,000 minimum amount in controversy required" as a precondition for federal diversity jurisdiction under 28 U.S.C. § 1332(a). We review this determination de novo. Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 328 (1st Cir. 2000); Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1336 (5th Cir. 1995). We conclude that the district court erred by focusing on the exercise price for the shares rather than the value of the warrant itself.

The Supreme Court erected the framework for determining whether a cause of action satisfies the jurisdictional minimum in St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283 (1938). The Court laid down a general rule to the effect that the amount specified by the plaintiff controls, as long as that amount is asserted in good faith. Id. at 288. Hence, a court can dismiss an action for insufficiency of the amount in controversy only when, "from the face of the pleadings, it is apparent, to a legal certainty, . . . that the plaintiff never

was entitled to recover" a sum equal to, or in excess of, the jurisdictional minimum. Id. at 289. On this record, we do not believe that the district court supportably could say to a legal certainty that the appellant was not entitled to recover more than $75,000 (or property worth more than that amount) under count five. We explain briefly.

As said, count five involves a warrant to acquire 1,000,000 shares of stock at an exercise price of $.001 per share. The value of a warrant is typically the difference between the market value (during the currency of the warrant period) of the shares to which the warrant pertains and the exercise price payable for those shares. See, e.g., Niagara Hudson Power Corp. v. Leventritt, 340 U.S. 336, 343-44 (1951); Custom Chrome, Inc. v. Comm'r, 217 F.3d 1117, 1125 (9th Cir. 2000); SEC v. Warde, 151 F.3d 42, 46 n.1 (2d Cir. 1998); Swiss Bank Corp. v. Dresser Indus., Inc., 141 F.3d 689, 691 (7th Cir. 1998). In his first affidavit, dated October 11, 1999, the appellant estimated the value of NetFax's patented technology at somewhere between $10,000,000 and $100,000,000, and the market value of NetFax stock at somewhere between $0.34 and $2.26 per share. Even taking the low-end valuation, the shares to which the warrant pertained theoretically were worth $340,000 at that point. On this set of assumptions, the value of the warrant

-19-

(the spread between market value and exercise price) would have been $339,000. This is a sum well above the requisite jurisdictional minimum.

We recognize, of course, that the party invoking jurisdiction has the burden to show that it is proper. E.g., Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). In an amount-in-controversy case, however, all the plaintiff must do to carry this burden in the face of a motion to dismiss is to set forth facts which, if true, would prevent the trier from concluding to a legal certainty that the potential recovery is capped at a figure below the jurisdictional minimum. See Dep't of Recreation & Sports v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991). Here, the appellant did supply some information bearing on the value of the warrant, and Lombardi proffered nothing to contradict these figures or otherwise establish that the appellant, even if successful in recovering the property (the warrant), would wind up with a prize worth less than $75,000. We do not think that the district court, on this bareboned record and without conducting an evidentiary hearing, could simply brush aside the appellant's estimates as "based entirely on speculation" and declare to a legal certainty that the warrant was worth less than the required jurisdictional

amount.  For this reason, we hold that the district court erred in dismissing count five of the amended complaint.[7]

## IV.  CONCLUSION

We need go no further.  For the reasons stated, we sustain the determination that Veritas was not properly before the court and, accordingly, we affirm so much of the lower court's order as dismissed, without prejudice, the claims against Veritas.  We also affirm the district court's dismissal of the first four counts of the amended complaint as to Lombardi.  We hold, however, that the court erred in concluding on this meager record that it lacked subject-matter jurisdiction over the fifth count of the amended complaint.  We therefore reverse so much of the order of dismissal as pertains to that count and remand for further proceedings consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.  No costs.**

---

[7]There is a wrinkle here.  According to the terms of the Agreement, the warrant expired during the pendency of this appeal.  We leave the legal significance (if any) of this new development to the parties and the district court.