# United States Court of Appeals
## For the First Circuit

No. 00-2153

FRANCISCO CORRADA BETANCES,

Plaintiff, Appellant,

v.

SEA-LAND SERVICE, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

Before

Selya, Boudin and Lynch,

Circuit Judges.

Harry Anduze Montaño and Noelma Colon Cordoves on brief for appellant.

Raquel M. Dulzaides, Carlos George, and Jimenez, Graffam & Lausell on brief for appellee.

May 3, 2001

**SELYA, Circuit Judge.** In this appeal, plaintiff-appellant Francisco Corrada Betances (Corrada) invites us to reverse a summary judgment order entered in favor of his former employer, defendant-appellee Sea-Land Service, Inc. (Sea-Land). We decline the invitation.

**I**

The summary judgment record (which, as we shall see, consists almost entirely of Sea-Land's submissions) reveals that, in late 1992, Corrada began working as assistant manager of Sea-Land's marine department in Puerto Rico. His duties involved supervising the loading and unloading of vessels and performing ancillary administrative tasks.

At all times relevant hereto, Sea-Land had in force a personnel policy prohibiting employees both from drinking while working and from appearing at work under the influence of alcohol. The policy stipulated that a first infraction would result in a two-week suspension without pay and that a second infraction, occurring within eighteen months of the first, would result in loss of employment. Sea-Land furnished a copy of this policy to Corrada coincident with his hiring.

At the end of his shift on April 21, 1997, Corrada left Sea-Land's premises with Ernie Ostolaza, a fellow supervisor. The pair visited various watering holes, imbibing as they went.

Five hours later, they returned to Sea-Land's premises to retrieve Ostolaza's car. After they arrived, they did not simply drive away, but, rather, entered the marine department office (where others were still toiling) and engaged in raucous behavior. The matter apparently was reported through channels and, on April 22, Corrada and Ostolaza were suspended for two weeks. For aught that appears, this suspension was neither vacated nor overturned.[1]

Corrada returned to work in May. On November 11, 1997, he called the office to say that he would be late for work. When he arrived, he was wearing the same clothes that he had been wearing the day before, and a fellow supervisor, Victor Ortega, smelled a strong odor of alcohol on his breath. Various co-workers noticed slurred speech, bloodshot eyes, slumped posture, and other indicia of inebriation. The marine manager, Juan Carrero, spent a few minutes with Corrada, obviously disliked what he saw, told Corrada that he was in no shape to work, and ordered him to leave the premises. The next day, Sea-Land terminated Corrada's employment.

**II**

---

[1]This undermines the claim made in Corrada's appellate brief, that his initial suspension was unwarranted under a literal interpretation of the personnel policy (which threatens suspension if an employee "is found to be drinking on the job or if [he] reports to work under the influence of alcohol").

Invoking diversity jurisdiction, 28 U.S.C. § 1332(a), Corrada sued Sea-Land in Puerto Rico's federal district court. He charged that his firing was unjustified, that statements made by Sea-Land's hierarchs regarding his discharge violated his privacy rights, and that Sea-Land had defamed him. The case ended when the district court granted Sea-Land's motion for summary judgment. Corrada Betances v. Sea-Land Serv., Inc., No. 99-1671 (D.P.R. July 24, 2000) (unpublished). This appeal ensued.

## III

There is little point in attempting to reinvent a well-fashioned wheel. Where, as here, a trial judge astutely takes the measure of a case and hands down a convincing, well-reasoned decision, "an appellate court should refrain from writing at length to no other end than to hear its own words resonate." Lawton v. State Mut. Life Assur. Co., 101 F.3d 218, 220 (1st Cir. 1996); accord Cruz-Ramos v. P.R. Sun Oil Co., 202 F.3d 381, 383 (1st Cir. 2000); Ayala v. Union de Tronquistas de P.R., Local 901, 74 F.3d 344, 345 (1st Cir. 1996); Holders Capital Corp. v. Cal. Union Ins. Co. (In re San Juan Dupont Plaza Hotel Fire Litig.), 989 F.2d 36, 38 (1st Cir. 1993). Consequently, with one exception (discussed infra), we affirm the judgment below for substantially the reasons elucidated in Judge Pieras's

-5-

thoughtful rescript.  We add only a few comments about Corrada's wrongful discharge claim, and then discuss the one aspect of the case where we disagree with the district court's rationale.  We rely entirely on the trial court's rescript vis-à-vis Corrada's privacy claims.  And, inasmuch as Corrada's appellate brief contains no developed argumentation in support of his defamation claim, we deem that claim abandoned.  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

**IV**

Corrada complains bitterly that the lower court impermissibly credited Sea-Land's version of the facts.  But Corrada himself neither volunteered an affidavit nor filed any other materials of evidentiary quality to contradict Sea-Land's documented account.  A party who opposes a properly substantiated motion for summary judgment but fails to muster counter-affidavits or other evidentiary materials does so at his peril.  Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning of the dangers of giving one's litigation adversary a free hand in configuring the summary judgment record).

To be sure, Corrada's attorney did file legal memoranda in the district court suggesting, for example, that Sea-Land's stated reliance on corporate policy was pretextual and that its

-6-

real reasons for cashiering Corrada were spiteful. Such filings, however, are manifestly insufficient to create genuine issues of material fact (and, thus, to deflect the blade of the summary judgment ax). We have held before, and today reaffirm, that statements contained in a memorandum or lawyer's brief are insufficient, for summary judgment purposes, to establish material facts. See, e.g., Fragoso v. Lopez, 991 F.2d 878, 887 (1st Cir. 1993); Kelly, 924 F.2d at 357.

By the same token, Corrada does not profit, in the circumstances of this case, from his filing of a so-called "Counterstatement of Uncontested Material Facts." We explain briefly.

The District of Puerto Rico has adopted a local rule that requires a party who moves for summary judgment to submit, in support of the motion, "a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried and the basis of such contention as to each material fact, properly supported by specific reference to the record." D.P.R.R. 311.12. Once Sea-Land complied with this directive — as it did — the same rule then obligated Corrada, as the opposing party, to proffer a comparable statement limning "the material facts as to which it is contended that there exists a genuine issue to be tried,

properly supported by specific reference to the record." <u>Id.</u> (emphasis supplied).

With regard to this particular section of the rule, we have recently reiterated that the nonmovant's "failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted." <u>Ruiz Rivera</u> v. <u>Riley</u>, 209 F.3d 24, 28 (1st Cir. 2000); <u>accord</u> <u>Morales</u> v. <u>A.C. Orssleff's EFTF</u>, ___ F.3d ___, ___ (1st Cir. 2001) [No. 00-1707, slip op. at 3]. These authorities undermine Corrada's attempted reliance on his response to Sea-Land's meticulous Rule 311.12 statement as a basis for this appeal. That response was woefully deficient. Although Corrada stalwartly refused to admit many of the facts assembled by Sea-Land, he utterly failed to point to any record references, let alone any admissible evidence, that might support a contrary version.[2]

That ends this portion of our inquiry. Bombast and bluster, wholly detached from verified facts of record, cannot

---

[2]In all events, Corrada's counter-statement did not contest the existence of Sea-Land's "no drinking on the job" policy, the occurrence of his earlier suspension, or the fact that he reported to work intoxicated on the day before Sea-Land fired him. He apparently concedes that these facts are incontrovertible.

serve to blunt the force of a movant's statement of undisputed facts. Thus, the district court acted appropriately in crediting Sea-Land's statement of material facts not in dispute.

## V

Corrada asserts that the district court should have allowed him more time for pretrial discovery before ruling on Sea-Land's dispositive motion. This assertion comes too late.

We will not belabor the obvious. Corrada did not file a Rule 56(f) motion, nor did he bring to the district court's attention in any equivalent manner the "denial of discovery" plaint that he voices here. Those omissions defeat his afterthought claim. If any principle is firmly established in this circuit, it is that, in the absence of excusatory circumstances — and none are apparent here — arguments not seasonably raised in the district court cannot be raised for the first time on appeal. Teamsters Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992); McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991). That principle pertains here.[3]

## VI

---

[3]In all events, Corrada had ample time within which to conduct discovery. He started suit on June 16, 1999, and Sea-Land did not move for summary judgment until nearly a year later (May 31, 2000).

Our last comment requires us to part company with the lower court. Among his array of claims, Corrada asserted a cause of action under 29 P.R. Laws Ann. §§ 185a-185m (Law 80). That statute provides remediation for employees at will who are discharged without good cause.

In this instance, the district court, having foreclosed Corrada's other initiatives, declined to address his Law 80 claim on jurisdictional grounds. The court reasoned that it lacked subject matter jurisdiction because this claim, standing alone, failed to satisfy the amount in controversy requirement ($75,000) established as a prerequisite to federal diversity jurisdiction.[4] See 28 U.S.C. § 1332(a).

We review de novo a district court's determination that it lacks subject matter jurisdiction. Barrett v. Lombardi, 239 F.3d 23, 30 (1st Cir. 2001). Despite our admiration for the district court's adroit handling of the other issues in this

---

[4]Severance pay is the exclusive remedy afforded by Law 80. See 29 P.R. Laws Ann. § 185a. The statute provides for varying payments depending on years of service. Since Corrada worked for Sea-Land for slightly over five years, he would have been entitled to two months' wages as severance pay under Law 80 had he prevailed. See id. Corrada's annual salary at the time of his discharge was $39,529.34. Thus, his Law 80 claim, if successful, would have yielded an award substantially below the amount in controversy required as a precondition to federal diversity jurisdiction. See 28 U.S.C. § 1332(a).

-10-

case, we think that the court erred in concluding that subject matter jurisdiction was wanting.

The critical time for determining the existence vel non of the amount in controversy is the inception of the suit, i.e., the time of filing. See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289-90 (1938); Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 6 (1st Cir. 1995). The amount claimed at that time controls, so long as asserted in good faith. St. Paul, 303 U.S. at 288; Mas v. Perry, 489 F.2d 1396, 1400 (5th Cir. 1974). Thus, a court can dismiss an action for insufficiency of the amount in controversy only when, from the face of the complaint, the court can conclude to a legal certainty that the plaintiff is not entitled to recover the threshold amount. Barrett, 239 F.3d at 30-31.

At the inception of this suit, the complaint contained wrongful discharge, invasion of privacy, and defamation claims (as well as the Law 80 claim). These causes of action had the collective potential to reap a harvest well in excess of $75,000. No more was exigible to satisfy the amount in controversy requirement. See id. Moreover, once diversity jurisdiction had attached, subsequent events (e.g., the revealed impotency of Corrada's potentially more munificent claims) could not work a divestiture. See St. Paul, 303 U.S. at 289-90.

-11-

The district court's error, however, was altogether harmless.  Consequently, it neither necessitates vacation of the judgment nor affects the outcome on appeal.  No award is due under Law 80 if an employee is dismissed for "good cause."  29 P.R. Laws Ann. § 185b.[5]  The law defines "good cause" to include, inter alia, situations in which an employee is cashiered for "indulg[ing] in a pattern of improper or disorderly conduct," id. § 185b(a), and those in which he or she is discharged for repeatedly violating "reasonable rules and regulations established for the operation of the [employer's business], provided a written copy thereof has been opportunely furnished to the employee."  Id. § 185b(c).  Both of these definitions apply here.  Thus, based on the uncontradicted facts, the record in this case leaves no doubt that good cause (i.e., the serial violations of the "no drinking on the job" policy) existed for Sea-Land's decision to hand Corrada his walking papers.

We therefore affirm the judgment as to the Law 80 claim on this alternate ground.  See Houlton Citizens' Coalition v.

_____

[5]A minor discrepancy deserves comment.  The title of article 185b refers to dismissal for "just cause," whereas the text predominantly uses the term "good cause."  As a general rule, the language of the statutory text holds sway over the wording of the title.  Penn. Dep't of Corrs. v. Yeskey, 524 U.S. 206, 212 (1998).  In this instance, however, the two terms appear to be used synonymously.  Accordingly, we treat them as interchangeable.

-12-

<u>Town of Houlton</u>, 175 F.3d 178, 184 (1st Cir. 1999) (explaining that the court of appeals may affirm the entry of judgment on any ground made manifest by the record).

**VII**

Since the record, carefully scrutinized, confirms that (1) Sea-Land had an established personnel policy prohibiting reporting to work in an intoxicated condition, and (2) Corrada, having once been suspended for violating the policy, again flouted it, Sea-Land justifiably fired him in response to the second violation. That discharge was for good cause; and, for the reasons stated by the district court, Sea-Land accomplished it without infringing Corrada's privacy rights or defaming him. We need go no further.

**<u>Affirmed</u>.**