# United States Court of Appeals
## For the First Circuit

No. 10-2329

LUIS A. CARRERAS AND
TOMMY O. HABIBE-VARGAS,

Plaintiffs, Appellants,

v.

PMG COLLINS, LLC AND
INTERNATIONAL SALES GROUP, L.L.C.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Boudin, Selya and Dyk,[*]
Circuit Judges.

Richard Schell-Asad and Troncoso Schell & Bobonis on brief for appellants.
Daniel F. Blonsky and Coffey Burlington on brief for appellee PMG Collins, LLC.
Edward W. Hill and Pirillo Hill Gonzalez & Sanchez, P.S.C. on brief for appellee International Sales Group, L.L.C.

November 10, 2011

[*]Of the Federal Circuit, sitting by designation.

**SELYA**, **Circuit Judge**.  After two planned sales of Florida real estate cratered, the erstwhile purchasers sued in Puerto Rico's federal district court for the return of earnest payments. The court dismissed their action for want of jurisdiction over the defendants (the developer and its general sales representative). The plaintiffs appeal.  Based on the incomplete record before us, we cannot determine whether personal jurisdiction exists. Accordingly, we vacate the judgment below and remand for further development of the record.

## I.  BACKGROUND

A brief introduction to the characters and plot suffices to set the stage for the jurisdictional analysis.  In October of 2005, plaintiff-appellant Tommy O. Habibe-Vargas (Habibe), a citizen and resident of Puerto Rico, contracted with defendant-appellee PMG Collins, LLC (Collins), a Florida corporation, to purchase a unit in a condominium complex (MEI) to be built in Miami, Florida.  Another Florida corporation, defendant-appellee International Sales Group, L.L.C. (ISG), sold the unit for Collins. Habibe agreed to pay an up-front deposit of earnest money equal to twenty percent of the purchase price, part of which he tendered prior to signing the purchase agreement.  The balance of the purchase price was due at closing.

Several months later, plaintiff-appellant Luis A. Carreras, a citizen and resident of Puerto Rico, similarly agreed

to purchase a unit in the MEI complex. Once again, ISG acted for Collins. Carreras, like Habibe, tendered a portion of the purchase price as an earnest deposit and signed a written purchase agreement that provided for payment of the balance of the purchase price at closing.

Construction of the MEI complex proceeded. As the scheduled closings approached in late 2008, a financial crisis enveloped the nation's credit markets, and the two would-be purchasers found themselves unable to obtain mortgage financing. The closing dates came and went, no further money changed hands, and Collins terminated the agreements for non-performance while retaining the earnest payments.

The plaintiffs repaired to the United States District Court for the District of Puerto Rico and sued both Collins and ISG for the return of their deposits. The defendants moved to dismiss, arguing that the district court lacked in personam jurisdiction and that, in all events, Puerto Rico was an inappropriate venue. The court permitted discovery limited to jurisdictional facts and, based on the developed record, concluded that neither defendant had contacts with Puerto Rico sufficient to permit the exercise of jurisdiction. This timely appeal followed.

## II. ANALYSIS

It is common ground that a court is without authority to adjudicate a transitory cause of action if it lacks personal

jurisdiction over the defendant.  See, e.g., United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 35 (1st Cir. 1999).  Personal jurisdiction comes in two distinct analytic strains: general and specific.  Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).  Although the plaintiffs pressed both of these theories in the court below, they have premised their appeal solely on an assertion of specific jurisdiction.  We limit our discussion accordingly.

A federal court may assert specific jurisdiction over a defendant only if doing so comports with both the forum's long-arm statute and the Due Process Clause of the United States Constitution.  See Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001).  Here, the two modes of analysis merge into one because the reach of Puerto Rico's long-arm statute is coextensive with the reach of the Due Process Clause.  See Negrón-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 24 (1st Cir. 2007).  For ease in exposition, we frame our analysis in constitutional terms.

The due process inquiry turns on whether the dispute sub judice is adequately related to a significant set of contacts between the defendant and the forum.  Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999); see Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  There are a number of procedural paths that an inquiring court can traverse when exploring this question.  See Foster-Miller, Inc. v. Babcock

& Wilcox Can., 46 F.3d 138, 145-46 (1st Cir. 1995) (limning available options).  The choice depends on when and how the issue is broached.  The court below chose to employ the prima facie standard, and the parties do not question that choice.  We review the district court's application of the prima facie standard de novo.  Barrett, 239 F.3d at 27.

To satisfy the prima facie standard in a specific jurisdiction case, a plaintiff may not rest on mere allegations but, rather, must submit competent evidence showing sufficient dispute-related contacts between the defendant and the forum.  Id. at 26; Foster-Miller, 46 F.3d at 145.  The court, in turn, must view this evidence, together with any evidence proffered by the defendant, in the light most favorable to the plaintiff and draw all reasonable inferences therefrom in the plaintiff's favor. Mass. Sch. of Law, 142 F.3d at 34.  A court need not, however, credit bald allegations or unsupported conclusions.  Id.

Read in the required light, the record shows that Maria-Laura Rainer, a Florida-based employee of ISG, telephoned the plaintiffs in Puerto Rico and offered to sell each of them an MEI unit.[1]  But the evidence is undisputed that the initial contact between Rainer and the plaintiffs was not unsolicited marketing.

---

[1] The defendants have presented evidence suggesting that it was the plaintiffs who first contacted Rainer.  For present purposes, however, we accept arguendo the plaintiffs' testimony that Rainer made the first contact.

Instead, the plaintiffs were referred to Rainer by a real estate broker in Puerto Rico named Lillybeth Rosario Medina (Rosario). Rosario had met Rainer in 2003 when Rosario was considering a real estate purchase in Florida. Since that time, Rainer had kept in touch with Rosario by periodically sending her ISG listings via e-mail. It was Rosario who put Habibe in contact with Rainer. Habibe later referred Carreras to Rainer because Carreras was also interested in purchasing a unit at MEI. In return for referring Habibe (and indirectly referring Carreras), ISG paid finder's fees to Rosario.

During the initial telephone calls between Rainer and the plaintiffs, Rainer limned the prices of the MEI units and the terms of sale, and the plaintiffs agreed in principle to purchase the units. Rainer subsequently called each plaintiff in Puerto Rico to request a tender of the agreed-upon earnest money. These payments were sent to and received in Florida. Rainer then prepared the purchase agreements in Florida and mailed them to Habibe and Carreras, respectively. Each plaintiff received and signed his agreement in Puerto Rico and mailed it back to Florida.

There are a few other facts in the record that arguably pertain to these transactions. First, in October of 2007, while visiting Puerto Rico, Rainer provided Carreras with an update on the progress of the MEI construction. Second, Rainer, on one occasion, tried to sell an MEI unit to Carreras's brother.

More peripherally, the record contains evidence that ISG advertised the MEI complex in "American Way," a magazine available on American Airlines flights worldwide, including flights to and from Puerto Rico. Further, the MEI complex was featured in an article published in "Caras," a magazine distributed in Puerto Rico. Notably, the "Caras" article was unsolicited press coverage, not a paid puff piece.

The plaintiffs also list a number of contacts between ISG and Puerto Rico that bear no relation to the failed transactions. This list includes evidence that an ISG affiliate opened an office in Puerto Rico to market a local project; that ISG made occasional sales to other residents of Puerto Rico; that ISG representatives periodically called the plaintiffs (and other Puerto Rico residents) in an effort to market properties other than the MEI complex; and that Rainer made presentations in Puerto Rico in October of 2007 (well after both of the purchase agreements at issue had been signed, sealed, and delivered) regarding MEI and ISG properties in Panama and New Orleans.

Most of the contacts between the defendants and Puerto Rico described above are plainly insufficient to vest the district court with specific jurisdiction over this matter. Nevertheless, there are two contacts (the listings that Rainer periodically e-mailed to Rosario and ISG's relationship with Rosario) on which the record is poorly developed. Depending on what the facts actually

are, these contacts, either singly or in combination, might support a finding of specific jurisdiction. But we cannot tell: neither the parties nor the district court focused on them, and such a focus is essential to an assessment of their significance.

As a general matter, the inquiry into specific jurisdiction comprises three questions. First, the court must ask whether the asserted causes of action arise from or relate to the defendant's contacts with the forum. Phillips Exeter, 196 F.3d at 288. Second, the court must consider whether the defendant purposefully availed itself of the protections of the forum's laws by means of those contacts, such that the defendant could reasonably foresee being haled into the forum's courts. Id. Third, the court must consider whether an exercise of jurisdiction is consistent with principles of justice and fair play. Id. Specific jurisdiction lies only if all of these queries are susceptible to affirmative answers. See Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994).

In the case at hand, the asserted causes of action sound in contract. Thus, the relatedness inquiry hinges on whether the defendants' contacts were instrumental in either the formation or breach of the agreements in question. Adelson v. Hananel, 652 F.3d 75, 81 (1st Cir. 2011); Phillips Exeter, 196 F.3d at 289.

Most of the contacts between the defendants and Puerto Rico had absolutely no bearing on the formation or breach of the

purchase agreements at issue and thus are immaterial to a claim of specific jurisdiction.  To begin, we reject the plaintiffs' importunings that the "Caras" article and the "American Way" advertisements support a finding of specific jurisdiction.  The "Caras" article was published in November 2006, several months after the second of the two purchase agreements was signed.  The initial "American Way" advertisement debuted at an even later date.  It is self-evident that publications appearing after a contract has been executed can have no material effect on its formation.  Cf. Harlow v. Children's Hosp., 432 F.3d 50, 61-62 (1st Cir. 2005) (holding that contacts occurring after tort cause of action has accrued generally are irrelevant to specific jurisdiction analysis).  By the same token, there is no evidence that these publications played the slightest part in any subsequent breach of the purchase agreements.

Like the magazine pieces, Rainer's construction update occurred after the execution of the purchase agreements.  It had no discernable effect on either the formation or the breach of those agreements.  Similarly, the supposed effort to sell a unit to Carreras's brother had nothing to do with either the formation or breach of the relevant contracts.  Many of the remaining contacts

-9-

described by the plaintiffs are so far removed from the asserted causes of action that they do not warrant discussion.[2]

Only a few of the contacts between the defendants and Puerto Rico fit within the relatedness inquiry. These include Rainer's telephone calls to Habibe and Carreras offering the condominium units for sale; the calls requesting tender of the earnest payments; the mailing of the purchase agreements to Puerto Rico for signature; and ISG's relationship with Rosario. Each of these contacts played a direct role in the formation of the purchase agreements at issue and is thus "related" to the dispute.

There is another contact that is potentially related to the present dispute on which the record is largely silent: the ISG listings that were periodically e-mailed from Rainer to Rosario. Specifically, it is unclear from the record where Rosario was when she received these listings[3] and, in any event, whether they played any role in the referrals of (and subsequent purchases by) Habibe

---

[2] To be sure, some of these contacts — such as the subsequent opening of an office in Puerto Rico by ISG — might be relevant to a claim of general jurisdiction. See, e.g., Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1173-74 (9th Cir. 2006) (holding that general jurisdiction lies where defendant maintains office in forum and does extensive business there); 4 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1067.5 (3d ed. 2002) (listing marketing in forum and maintenance of office there as factors relevant to general jurisdiction inquiry). Here, however, the plaintiffs have not pursued the claim of general jurisdiction on appeal.

[3] The record is unclear as to whether Rosario even lived in Puerto Rico during the relevant time frame.

and Carreras. Common sense would suggest that Rosario made her referrals in part because she had learned of the available MEI units from the listings that she received. Nevertheless, an ambiguous snippet of the record suggests that the referrals may have occurred solely because Habibe had asked Rosario for the name of the agent (Rainer) whom Rosario had used in conjunction with her own real estate purchase in Florida. The unanswered questions concerning these listings may affect the jurisdictional outcome.

We turn next to the "purposeful availment" inquiry. The baseline rule is that a defendant is subject to jurisdiction only when it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." J. McIntyre Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 2787 (2011) (plurality op.). Purposeful availment represents a rough quid pro quo: when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject the defendant to judgment regarding that behavior. Id. at 2787-88. By focusing on the defendant's intentions, the purposeful availment standard ensures that a defendant will not be subjected to personal jurisdiction based on "random, fortuitous, or attenuated contacts." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quotation marks omitted). For specific jurisdiction to attach, the forum-related contacts must be of such a nature that the defendant can

reasonably foresee being haled into court there.  See Foster-Miller, 46 F.3d at 144.

The purposeful availment standard eliminates most of the contacts that had passed through the relatedness screen.  For example, when Rainer called the plaintiffs to offer the condominium units for sale, ISG did not intentionally invoke the protections of Puerto Rico's laws.  We recognize that targeted marketing to customers in a forum may give rise to specific jurisdiction over a dispute involving a transaction that results from that marketing.  See, e.g., uBid, Inc. v. GoDaddy Grp., Inc., 623 F.3d 421, 427-33 (7th Cir. 2010).  Here, however, nothing in the record suggests that Rainer's initial calls to Habibe and Carreras were part of a broad marketing effort.  To the contrary, Rainer had been informed that Habibe was interested in purchasing an MEI unit and wanted to speak with an ISG representative.  Habibe then told Rainer that Carreras, too, was interested.  Rainer thus was not fishing for customers in an undifferentiated pool but was simply contacting people who had asked to be contacted.  A company does not subject itself to jurisdiction in a forum simply by following up with forum residents who, without prior solicitation, have expressed an interest in purchasing the company's product.  Cf. Harlow, 432 F.3d at 62-63 (holding that accepting unsolicited referrals from doctors in forum does not subject hospital to suit there).

Nor can ISG's act of mailing the purchase agreements to Puerto Rico support a claim of specific jurisdiction. We previously have held that a party who — like ISG — merely mails a contract into a forum for signature after its terms have been negotiated cannot reasonably foresee being sued there. See Phillips v. Prairie Eye Ctr., 530 F.3d 22, 29 (1st Cir. 2008). By like token, the defendants did not intentionally avail themselves of the benefits of doing business in Puerto Rico merely by calling residents of Puerto Rico to request the tender of a previously negotiated deposit. See Moncrief Oil Int'l Inc. v. OAO Gazprom, 481 F.3d 309, 312 (5th Cir. 2007) (holding that the "exchange of communications in the course of developing and carrying out a contract" does not qualify as purposeful availment).

This leaves only two items. First, if ISG sent listings to Rosario knowing that she was in Puerto Rico, that fact might bear on purposeful availment. See supra p. 10. Second, and more broadly, the nature of the relationship between ISG and Rosario may determine the purposeful availment question. If Rosario served as ISG's agent in Puerto Rico in connection with the Habibe and Carreras purchases, then ISG (and presumably Collins as well) would likely be subject to personal jurisdiction there. See United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1090 (1st Cir. 1992) (explaining that "the contacts of a corporation's agent can subject the corporation to personal

-13-

jurisdiction").  But the record is hopelessly murky on the matter of agency.  On the one hand, the relevant purchase agreements, as well as the co-brokerage agreements between ISG and Rosario, sometimes refer to the latter as an "agent."  This suggests that Rosario was the agent for someone, perhaps ISG.  On the other hand, the parties' use of the term "agent" is erratic; and at any rate, their use of that term is not a talisman that creates an agency relationship.  See Restatement (Third) of Agency § 1.02 (2006).  An agency relationship would exist only if ISG had manifested its assent to have Rosario act on its behalf and subject to its control.  See id. § 1.01.  On this scumbled record, we are unable to determine whether such a manifestation occurred.

Because the answer to this question may well be jurisdictionally dispositive, we think that the fairest course is to vacate the judgment and remand for a determination of whether an agency relationship existed between ISG and Rosario; and, if so, whether that agency relationship supports the plaintiffs' claim of specific jurisdiction.[4]  At the same time, the district court should determine whether the e-mailed listings are related to the dispute sub judice and whether Rainer knew that Rosario was in

---

[4] The agency analysis need consider only whether Rosario served as ISG's agent for the purpose of aiding the formation and/or closing of the plaintiffs' purchase agreements.  An agency relationship between Rosario and ISG in a different context would not be related to the present dispute and, thus, could not support a claim of specific jurisdiction.

-14-

Puerto Rico when she sent them.  The inquiry into these e-mails should focus on the time period prior to the Habibe and Carreras referrals.

## III.  CONCLUSION

We summarize succinctly.  On this record, the answer to the jurisdictional question is uncertain.  The determination as to whether or not specific jurisdiction exists cannot appropriately be made without further factual development regarding the listings that were e-mailed from Rainer to Rosario and the relationship between Rosario and ISG.  Thus, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

On remand, the only issues that are open for adjudication are (a) whether after further development of the facts specific jurisdiction exists; and (b) whether the defendants' alternative prayer for a transfer of venue should be granted.  The district court may decide these questions in whichever order it chooses.[5] We take no view as to the existence of specific jurisdiction or as to the propriety of a change in venue.  The district court, in its sound discretion, may decide to what extent further discovery is desirable and how best to conduct future proceedings.

---

[5] If the district court decides that a transfer of venue is appropriate, then it may eschew a decision on the issue of specific jurisdiction.  See Leroy v. Great W. United Corp., 443 U.S. 173, 180-81 (1979).

-15-

We add a coda.  It is, of course, the plaintiffs' burden to adduce facts that support a finding of jurisdiction.  But this is the rare case in which neither the parties nor the district court have honed in on the dispositive jurisdictional issues.  Given these omissions, remanding for further proceedings seems to us the wisest approach.  We caution, however, that our opinion should not be read as automatically providing plaintiffs with an instant replay should they fail to carry their burden of proving jurisdiction in the district court.

**<u>Vacated and remanded.  All parties shall bear their own costs.</u>**