# United States Court of Appeals
## For the First Circuit

No. 24-1697

KURT STOKINGER; JANELLA STOKINGER,

Plaintiffs, Appellants,

v.

ARMSLIST, LLC,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Barron, Chief Judge,
Rikelman,* Circuit Judge.

Douglas N. Letter, with whom John D. Kimball, Robyn L. Michaelson, Reena Jain, Alexander D. Newman, Blank Rome LLP, Mark D. Morrissette, Brian J. Stankiewicz, McDowell & Morrissette PA, and Brady United Against Gun Violence were on brief, for appellants.

---

* Judge Selya heard oral argument in this case and participated in the initial semble thereafter. His death on February 22, 2025, ended his involvement in this case. The remaining two panelists issued this opinion pursuant to 28 U.S.C. § 46(d).

Andrew R. Hamilton, with whom Mark C. Rouvalis; Joseph A. Foster; Min Ji (Stephanie) Nham; and McLane Middleton, Professional Association were on brief, for appellee.

_____

February 5, 2026

_____

BARRON, **Chief Judge**.    We once again must determine whether the owner of a website is subject to personal jurisdiction based on the design and operation of that website.    The website owner this time is Armslist, LLC ("Armslist"), a Pennsylvania-based company that owns and operates Armslist.com, an online marketplace for firearms and firearm-related products.    The company was sued in the United States District Court for the District of New Hampshire under New Hampshire law for, among other things, negligence and public nuisance.    The plaintiffs are Kurt Stokinger, a former Boston police officer, and his wife, Janella Stokinger (together, the "Stokingers").    Their claims allege that Armslist -- through its website -- facilitated the sale of a firearm in New Hampshire in 2015 that was used in 2016 to shoot Officer Stokinger in Boston.

The District Court denied the Stokingers' request for jurisdictional discovery and dismissed their claims for lack of personal jurisdiction.    It based the latter determination on Armslist not having "purposefully availed" itself of the protections of New Hampshire's laws.    The Stokingers appeal the dismissal of their claims.    We affirm in part and vacate in part.

**I.**

The Stokingers initially filed a separate suit on October 18, 2018, in the Massachusetts Superior Court against

Armslist and others not named as defendants in the suit that underlies this appeal. Those other parties included the person alleged to have shot Officer Stokinger in 2016 and the alleged firearm trafficker involved in a sale of the gun that was ultimately used in that shooting.

The complaint set forth Massachusetts-law claims against Armslist for, among other things, negligence, aiding and abetting tortious conduct, and public nuisance. Armslist moved to dismiss the complaint in March 2019. It asserted in that motion that the company lacked sufficient ties to Massachusetts to be subject to personal jurisdiction there. Armslist also filed a second motion to dismiss the complaint. It asserted in that motion that the Stokingers' claims were barred by Section 230 of the Communications Decency Act (the "CDA"), 47 U.S.C. § 230, which shields online internet service providers from liability in some circumstances.

One year later, in March 2020, the Massachusetts Superior Court granted Armslist's second motion to dismiss based on the CDA. It did so without ruling on Armslist's motion to dismiss for lack of personal jurisdiction. Armslist then moved for partial reconsideration, as it requested that the court rule on the motion to dismiss for lack of personal jurisdiction.

The Massachusetts Superior Court denied the motion for partial reconsideration without prejudice. It also granted the Stokingers' request to take jurisdictional discovery. The

jurisdictional discovery primarily focused on Armslist's connections to Massachusetts, although several of the interrogatories and document requests sought information about Armslist's connections to New Hampshire.

At the close of this discovery, Armslist renewed its earlier motion to dismiss the Stokingers' claims for lack of personal jurisdiction. In December 2021, the Massachusetts Superior Court granted the motion and dismissed the Stokingers' claims on that jurisdictional ground.

The Stokingers brought the suit that underlies this appeal nearly two years later, in September 2023. They filed the suit in the United States District Court for the District of New Hampshire. The complaint sets forth New Hampshire law-based claims against Armslist for negligence, aiding and abetting tortious and illegal conduct, public nuisance, loss of spousal consortium, and loss of support. The claims are based on allegations that Armslist "negligently and recklessly designed [its website] in such a way that it actively encourage[d], assist[ed], and profit[ed] from the illegal sale and purchase of firearms," which resulted in the sale of the firearm used to shoot Officer Stokinger in 2016.

In November 2023, Armslist simultaneously filed two motions to dismiss. One motion asserted that the District Court lacked personal jurisdiction over Armslist because the company lacked sufficient ties to New Hampshire. The other asserted that

- 5 -

the New Hampshire statute of limitations, the doctrine of res judicata, the doctrine of collateral estoppel, and the CDA each independently barred the Stokingers' claims.

The Stokingers opposed both motions. In their opposition to the motion to dismiss for lack of personal jurisdiction, they argued that they did have sufficient ties to New Hampshire. In the alternative, however, they requested that the District Court defer ruling on personal jurisdiction to permit them to conduct jurisdictional discovery. The Stokingers supported that discovery request by asserting that Armslist's motion to dismiss for lack of personal jurisdiction relied on "self-serving facts" that were "years out of date" and that the "relevant" evidence of Armslist's connections to New Hampshire was "solely with[in] Armslist's control."

The District Court denied the Stokingers' request for jurisdictional discovery and granted Armslist's motion to dismiss for lack of personal jurisdiction on the ground that Armslist had not purposefully availed itself of the protections of New Hampshire's laws. Armslist's other motion to dismiss was denied as moot. The Stokingers timely appealed.[1]

---

[1] Armslist does not ask us to affirm on the alternative bases raised in their other motion to dismiss the Stokingers' claims. Cf. NCTA -- The Internet & Television Ass'n v. Frey, 7 F.4th 1, 16 (1st Cir. 2021) ("But, even if we were to reject the District Court's reasoning, there is an independent basis manifest in the

- 6 -

## II.

In this Part, we will address the Stokingers' challenge to the District Court's ruling on personal jurisdiction. In Part III, we will address their challenge, in the alternative, to the District Court's denial of their motion for jurisdictional discovery.

## A.

The plaintiff bears the "ultimate burden of showing by a preponderance of the evidence that jurisdiction exists." Vapotherm, Inc. v. Santiago, 38 F.4th 252, 257 (1st Cir. 2022) (quoting Adams v. Adams, 601 F.3d 1, 4 (1st Cir. 2010)). Here, the District Court was exercising diversity jurisdiction and so was acting "as 'the functional equivalent of a state court sitting in the forum state.'" Rosenthal v. Bloomingdales.com, LLC, 101 F.4th 90, 94-95 (1st Cir. 2024) (quoting Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009)). As a result, to meet their ultimate burden to establish personal jurisdiction over Armslist in New Hampshire, the Stokingers must satisfy the requirements of both New Hampshire's long-arm statute -- which defines the scope of personal jurisdiction over a defendant in

---

record for affirming the District Court's ruling."). We thus leave it to the District Court on remand to address any questions concerning those grounds for dismissal, including any potential issues of waiver that may bear on them.

that state's courts -- and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.  See Negrón-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 24 (1st Cir. 2007).

As it happens, "New Hampshire's long-arm statute authorizes the exercise of personal jurisdiction . . . to the extent permissible under the [f]ederal Due Process [c]lause." Cappello v. Rest. Depot, LLC, 89 F.4th 238, 243 (1st Cir. 2023) (alterations in original) (quoting In re Reddam, 180 A.3d 683, 687-88 (2018)).  The Stokingers therefore can meet their burden as to both New Hampshire's long-arm statute and the Due Process Clause so long as they can show that the exercise of personal jurisdiction over Armslist comports with what federal constitutional due process requires.  See Vapotherm, 38 F.4th at 258.

To make that showing, the Stokingers must establish that Armslist had "certain minimum contacts with [New Hampshire] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  Those contacts may be marshalled to support a theory of either general or specific jurisdiction.  See Cappello, 89 F.4th at 244 (quoting Mallory v. Norfolk S. Ry. Co., 600 U.S. 122, 138 (2023)).  The Stokingers rely, however, solely on a theory of specific jurisdiction.  They thus must satisfy each prong of the specific-jurisdiction test: (1) relatedness,

- 8 -

(2) purposeful availment, and (3) reasonableness. See Scottsdale Cap. Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018).

The relatedness prong requires that each claim "directly arise[] out of or relate[] to" the defendant's contacts with the forum state. Id. The purposeful-availment prong requires that those contacts "represent a purposeful availment of the privilege of conducting activities in" the forum state. Id. The reasonableness prong requires that "the exercise of jurisdiction" over each claim be "ultimately reasonable." Id.

The District Court ruled on Armslist's motion to dismiss the Stokingers' claims for lack of personal jurisdiction "at the inception of the litigation -- without the benefit of either pretrial discovery or an evidentiary hearing." Rosenthal, 101 F.4th at 94. Therefore, to go forward on their claims at this juncture, the Stokingers need only make a prima facie showing of specific jurisdiction. See id. As a result, although the Stokingers need to "go beyond the pleadings and make affirmative proof" of "the existence of 'every fact required to satisfy'" their burden as to personal jurisdiction, we must accept their "properly supported proffers of evidence . . . as true." United Elec. Radio & Mach. Workers of Am. (UE) v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993) (quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992)); see also Baskin-Robbins Franchising

- 9 -

LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016).
Our review is de novo. Motus, LLC v. CarData Consultants, Inc.,
23 F.4th 115, 121 (1st Cir. 2022).

**B.**

In ruling that the Stokingers failed to make a prima
facie showing of specific jurisdiction, the District Court skipped
over the relatedness requirement. It ruled that, even assuming
that the Stokingers' claims were related to the contacts that they
relied on to establish specific jurisdiction, those contacts
failed to make a prima facie case that Armslist had purposefully
availed itself of the protections of New Hampshire's laws. It
then dismissed the Stokingers' claims solely on that basis.

The purposeful-availment requirement ensures that a
defendant's contacts with the forum state, from which the
plaintiffs' claims "directly arise[] out of or relate[] to,"
Scottsdale, 887 F.3d at 20, show that the defendant "deliberately
target[ed] its behavior toward the society or economy of [the]
forum [such that] the forum should have the power to subject the
defendant to judgment regarding that behavior," Baskin-Robbins,
825 F.3d at 36 (first and third alterations in original) (quoting
Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011)).
The requirement seeks to ensure that the defendant's related
contacts with the forum state are not "random, fortuitous, or

- 10 -

attenuated." Carreras, 660 F.3d at 555 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

"The cornerstones of" the purposeful-availment requirement "are voluntariness and foreseeability." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 66 (1st Cir. 2014). Voluntariness concerns whether "the defendant's contacts with the forum result proximately from [the defendant's] own actions." Motus, 23 F.4th at 124 (quoting Kuan Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 59 (1st Cir. 2020)). Foreseeability concerns whether "the defendant's conduct and connection with the forum [s]tate are such that [the defendant] should reasonably anticipate being haled into court there." Burger King, 471 U.S. at 474 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

The Stokingers take aim at the District Court's purposeful-availment ruling by directing our attention to the allegations in their complaint and the evidence that they proffered regarding: (1) the design of Armslist.com, (2) the advertising revenue that Armslist generated from visitors to its website, and (3) the average of "16,000 listings per year for firearms for sale in New Hampshire" that were posted on Armslist.com from 2018 on. They contend that their allegations and evidence suffice to make a prima facie case that Armslist deliberately targeted its behavior toward New Hampshire.

- 11 -

Notably, although all the Stokingers' claims rest on Armslist having facilitated the 2015 purchase of the firearm used to shoot Officer Stokinger in 2016,[2] some of the asserted contacts between Armslist and New Hampshire post-date both the firearm's sale in that state and Officer Stokinger's shooting. In particular, the evidence that an average of 16,000 "New Hampshire" listings appeared on Armslist.com per year from 2018 on concerns contacts that occurred after both the shooting and the sale in New Hampshire of the firearm allegedly used in it.

In considering whether to account for this evidence of Armslist's post-2016 contacts with New Hampshire, the District Court noted that our precedent indicates that "in most cases, contacts coming into existence after the cause of action arose will not be relevant." Harlow v. Child.'s Hosp., 432 F.3d 50, 62 (1st Cir. 2005). The District Court observed, however, that the Stokingers asserted that one of their claims -- the claim for public nuisance -- alleged a "continuing tort." It further observed that the Stokingers contended that features of that tort made the evidence of the post-2016 contacts relevant to their

_____

[2] In their complaint, the Stokingers assert that the shooting of Officer Stokinger occurred in January 2016 and that the sale of the firearm by the alleged shooter occurred in July 2016. This, however, appears to be an error that the District Court corrected in the decision below, and neither party makes note of it here on appeal.

attempt to establish specific jurisdiction over Armslist despite the "general rule" announced in Harlow, 432 F.3d at 62.

Ultimately, the District Court declined to decide whether these post-2016 contacts were relevant to the specific jurisdiction inquiry as to any of the Stokingers' claims, including their claim of public nuisance. Instead, it concluded that, even assuming that those contacts were relevant to all the Stokingers' claims, "the evidence the [Stokingers] rel[ied] on [was] not sufficient to establish purposeful availment in any event."

As we will explain, we conclude that the District Court was right to rule that the evidence of Armslist's contacts with New Hampshire as of 2015 -- the year that the company allegedly facilitated the purchase of the firearm in question -- and 2016 -- the year that Officer Stokinger was shot -- fails to establish a prima facie case of purposeful availment. But, as we also will explain, we do not agree with the District Court that the evidence of Armslist's post-2016 contacts with New Hampshire -- namely, the evidence that there were thousands of "New Hampshire" listings on Armslist.com from 2018 on -- similarly fails to make such a showing when that evidence is considered alongside the other evidence that the Stokingers have put forward.

Of course, there does remain a substantial question about whether the Stokingers can show that all (or even any) of their claims "directly arise[] out of or relate[] to" these

- 13 -

post-2016 contacts that, when considered alongside the Stokingers' other allegations and evidence, we conclude make a prima facie case of purposeful availment. Cappello, 89 F.4th at 244 (quoting Scottsdale, 887 F.3d at 20). It is hardly evident that claims predicated on the sale of a firearm that occurred in 2015 and a shooting that occurred in 2016 are related to listings that appeared on Armslist.com years later. See Harlow, 432 F.3d at 62.

Nevertheless, the District Court did not purport to address the relatedness requirement in dismissing the Stokingers' claims for lack of personal jurisdiction, and the parties provide only cursory briefing about how the evidence of the post-2016 contacts bears on that requirement. Accordingly, we decline to address that requirement in the first instance. See Yan v. ReWalk Robotics Ltd., 973 F.3d 22, 39 (1st Cir. 2020) ("[I]t is often appropriate to leave such a matter for the district court to address in the first instance on remand, especially when the grounds are not fully developed or fairly contested on appeal . . . ."). Instead, like the District Court, we limit our analysis of personal jurisdiction to the purposeful-availment requirement.

As we will explain, we see no basis for disturbing the District Court's purposeful-availment ruling insofar as it does not relate to the evidence from 2018 forward on which the Stokingers rely. Nevertheless, we conclude that the District Court

- 14 -

erred in ruling that the Stokingers failed to make a prima facie case as to purposeful availment once that evidence is taken into account.  Our reasoning follows.

**1.**

To show that they made a prima facie case that Armslist deliberately targeted its behavior toward New Hampshire, the Stokingers emphasize that the record supportably shows that Armslist designed its website specifically to facilitate what the website itself refers to as "local" transactions.  In that regard, they contend that their evidence supportably shows that Armslist designed its website to do more than merely permit a would-be firearms seller to create a listing "labeled with" the "geographic location" in which that seller, as well as the firearm to be sold, is "physically located."  They argue that their evidence supportably shows that Armslist designed its website to advise prospective firearms sellers to create listings with such geographic labels even when the sellers might otherwise have listed their products as being offered for sale in a different state.[3]

---

[3] In their reply brief to us and at oral argument, the Stokingers appeared to suggest that the website was so designed because federal law "prohibits an unlicensed dealer from selling to anyone who resides in a different state."  (Citing 18 U.S.C. § 922(a)(5).)  That suggestion, however, plays no role in our analysis.  See Sparkle Hill, Inc. v. Interstate Mat Corp., 788 F.3d 25, 29 (1st Cir. 2015) ("Our precedent is clear: we do not consider arguments for reversing a decision of a district court when the argument is not raised in a party's opening brief.").

To that point, the Stokingers note that Armslist.com hosts a Frequently Asked Questions ("FAQ") page that asks the question, "Can I post my listing in multiple locations?" and then answers, "No. You should create the listing in the location where you and your item are physically located." And, they point out, the next section of that same FAQ page explains, "If someone finds [the listing] in their home location, they assume they can go to your location and make a deal." (Emphasis added.)

Additionally, the Stokingers emphasize that, in designing the website to facilitate "local" transactions, Armslist did not merely draft its FAQ page or implement a means by which a would-be seller could attach a geographic label to a listing that the seller posts. They also direct our attention to evidence in the record that supportably shows that Armslist included a geographic-filtering mechanism on the website so that would-be firearms purchasers could search Armslist.com for firearms being offered for sale where "they live." Thus, the Stokingers contend, through these three website features -- the description on the FAQ page, the tool that allows sellers to create geographic labels, and the tool that allows buyers to filter listings by state -- Armslist sought to facilitate firearm sales not only "local[ly]" but in New Hampshire specifically. After all, the Stokingers emphasize, the company designed Armslist.com to permit

sellers to create "New Hampshire" listings and buyers to search specifically for listings with that geographic label.

Armslist responds by arguing that this evidence fails -- at least on its own -- to show that the company deliberately targeted its behavior toward New Hampshire. Armslist contends that nothing about Armslist.com's design in and of itself makes any transaction that the website facilitates more likely to happen "in New Hampshire than anywhere else." This is so, the company contends, precisely because the website is designed to permit sellers who access it to create firearms listings in each of the fifty states without the company doing anything to encourage those transactions to occur in New Hampshire specifically.

The company adds that "[t]he alleged statements on Armslist's website that the website was designed for 'local transactions'" does not permit a different conclusion. The reason, the company argues, is that "these local transactions occur wherever the website is accessible, i.e., in every state." Armslist adds, as the District Court explained, that the same is true of the website's inclusion of a means by which potential firearm purchasers may filter listings by state. The company explains that this is so because that filtering mechanism "is necessarily designed to benefit users regardless of their location" and, therefore, "does not render the website more likely to solicit or serve customers in New Hampshire than anywhere else."

- 17 -

In other words, Armslist contends that the website's design shows at most that the company intended to facilitate transactions that are "local" in the sense that they are between sellers and buyers who are in the same place at the time of sale. It thus contends that the design of the website does not -- at least on its own -- supportably show that Armslist intended to facilitate transactions that are "local" in the sense that they are between sellers and buyers in New Hampshire (or any other specific geographic locale).

Based on the reasoning in our most recent decision addressing purposeful availment based on the design and operation of a website, we agree with Armslist. In that case, Rosenthal v. Bloomingdales.com, LLC, the plaintiff sued a company that owned a department store chain for its use of technology that allegedly unlawfully intercepted and used information about the plaintiff's behavior while he was visiting the company's website. See 101 F.4th at 93-94. We acknowledged that the plaintiff alleged that the defendant had department stores in the forum and that the defendant "'knew that [the design and operation of its website] would directly result in collection of information from [forum] citizens while those citizens browsed' its website" because the "website allow[ed] a user to search for nearby stores by providing the user's location." Id. at 97-98 (emphasis added); see id. at

- 18 -

97 n.1. But we still concluded that the plaintiff could not make a prima facie showing of purposeful availment.

We explained that "[a]lthough the allegations and evidence that the plaintiff . . . provide[d] . . . show[ed] that [the defendant website operator] intentionally targeted the plaintiff when he happened to be in [the forum], they [did] not affirmatively prove that [the defendant website operator] knew that it was targeting him in [the forum]." Id. at 97. We added that "[e]ven assuming that [the website's design and operation] [did] in fact inform [the defendant website operator] about the location of a given user, there [was] not a shred of evidence in the . . . record that the plaintiff himself entered his location into the website when he accessed it." Id. at 98.

There are, of course, differences between this case and Rosenthal. Unlike the plaintiff there, the Stokingers do not allege that the harm that the defendant caused resulted from their having accessed its website in the forum state. See id. at 93-94. Instead, the Stokingers allege that the harm resulted from the defendant's website having facilitated an offline transaction between two users in the forum state.

Nonetheless, we find it significant that in Rosenthal the evidence that the defendant's website could track the plaintiffs in the forum state did not in and of itself suffice to make a prima facie showing that the defendant had deliberately

targeted its behavior toward that state.  Id. at 97-98.  Instead, we concluded there that the plaintiff's failure to put forth any evidence that he had accessed the website while he was in the forum state was fatal to his bid to show purposeful availment because nothing in the record sufficed to indicate that the defendant engaged in the allegedly unlawful conduct in that state at that time.

Based on our reasoning in Rosenthal, we conclude that the Stokingers need to do more than show that Armslist knew that its website had the capacity to facilitate firearm sales in New Hampshire.  It was evident in Rosenthal that, given the design of the website involved, the defendant -- a national department store chain with forum locations -- had reason to foresee that some of those accessing its website would be accessing it from the forum state.  See id. at 97 n.1.  Yet we determined that the design of its website, which included a similar geographic-filtering mechanism to Armlist.com, see id. at 98 ("[The defendant's] website allow[s] a user to search for nearby stores by providing the user's location."), was not enough by itself to supportably show that the defendant had deliberately targeted users in the forum state, id. at 97-98; see also id., at 98 n.2 ("The plaintiff does not consider the obvious fact that there is nothing stopping a user located outside of [the forum state] from entering a location within the state on [the defendant's] website.").

We explained in Rosenthal that, in the absence of any allegation supported by evidence that a person in the forum state had in fact used the website, "the plaintiff ha[d] not sufficiently established that [the defendant website operator] purposefully availed itself of what [the forum state] ha[d] to offer." Id. at 98. Indeed, as we explained in Chen, "[a]s a general matter," while the defendant "perhaps could have anticipated that [forum] residents (like residents of any other state) might" use the website "from the [forum state]," "this broad and generic degree of foreseeability is insufficient, standing alone, to rise to the level of purposeful availment." 956 F.3d at 60.

We see no basis for reaching a different conclusion here to the extent that the Stokingers rely solely on the evidence of Armslist.com's design. That evidence does show -- as the evidence in Rosenthal did -- that the defendant had reason to think that its website's design would result in the website impacting those in the forum state. See 101 F.4th at 97 n.1. But, we explained in Rosenthal that the mere fact that the website could be used to have such a forum-state impact was not enough to make a prima facie case of purposeful availment. See id. at 98. Rather, we concluded that such a prima facie case could not be made absent more direct evidence that the defendant knew that the website's capabilities were being so utilized. See id.

- 21 -

True, the Stokingers do at times refer to their allegations that the firearm used to shoot Officer Stokinger was offered for sale on Armslist.com and that the firearm was purchased in New Hampshire by a person who saw it listed on the website. However, they do not contend in any clear way either below or on appeal that the listing of the firearm in question bore a "New Hampshire" geographic label. And even if they could be read to assert as much, they do not develop any argument that the website's design in combination with the existence of that single New Hampshire listing was enough to establish purposeful availment. Instead, they argue at most with respect to such a listing -- at least in any clear fashion -- that the design of the website established purposeful availment and that the existence of the New Hampshire transaction established relatedness. Therefore, any purposeful-availment-based argument premised on both the website's design and the firearm in question having been listed on Armslist.com with a "New Hampshire" geographic label is waived for lack of development. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

**2.**

The Stokingers also rely on their allegation and evidence that Armslist generated advertising revenue from those visiting its website. But that allegation and evidence does not

- 22 -

in and of itself bolster their case for having made a prima facie showing of purposeful availment.[4]

The Stokingers' argument on this front suffers from the same defect as their argument concerning the website's design.  It too does nothing to show what we deemed crucial in Rosenthal with respect to a website that is accessible in every state -- namely, that the defendant knew that its website's capacity to have an impact in the forum state was in fact being operationalized to have an impact in that forum state.  See id. at 97-98.  Their argument here is only that Armslist.com had the capacity to generate advertising revenue from New Hampshire users, not that any revenue was so generated -- at least if we set aside the evidence that from 2018 on there were thousands of listings with "New Hampshire" geographic tags on Armslist.com.  Therefore, this

---

[4] The Stokingers do note that Armslist received revenue from subscription fees paid by New Hampshire-based "premium vendors." The Stokingers, however, distinguish this from their allegations concerning advertising revenue and do not appear to be basing their challenge to the District Court's ruling on evidence of "premium user" subscription fees.  In any event, to the extent they are attempting to establish purposeful availment on a theory predicated on the revenue generated by premium vendors -- who, we note, do not include the seller of the firearm in question -- it is waived for lack of development.  See Zannino, 895 F.2d at 17. Indeed, we note that in their opposition to Armslist's motion to dismiss for lack of personal jurisdiction below, the Stokingers relied on the existence of these premium vendors to establish purposeful availment under a "stream-of-commerce" theory.  They do not, however, make any argument on appeal based on that theory for their having made a prima facie case of specific jurisdiction.

argument, insofar as it rests solely on evidence other than the evidence of the post-2016 contacts, fails as well.

## 3.

There remains to address, then, only the Stokingers' allegation and evidence that, at least from 2018 on, Armslist.com hosted an average of "16,000 listings per year for firearms for sale in New Hampshire." As we have explained, this evidence concerns contacts that post-date, by years, both the sale of the firearm allegedly used to shoot Officer Stokinger and the shooting itself. It is therefore hardly clear how such evidence could be related to the Stokingers' claims. See Harlow, 432 F.3d at 62. But, assuming (like the District Court) that this evidence is related to any or all the Stokingers' claims, we conclude that it suffices to make a prima facie case of purposeful availment. Or at least we conclude that it does when it is considered alongside the allegations and evidence regarding the website's design and generation of advertising revenue.

The evidence of the "New Hampshire" listings supplies what is otherwise lacking -- evidence that supportably shows that Armslist knew that "it was intentionally operating its website" for the purpose of facilitating firearm sales in New Hampshire. Rosenthal, 101 F.4th at 97. It supportably does so because it shows that, from 2018 on, thousands of people each year were

accessing Armslist.com and seeking to sell their firearms in New Hampshire specifically. And so, based on this additional evidence concerning the volume of "New Hampshire" listings, we find that Armslist had reason to know not merely that its website was capable of being used to facilitate firearm sales in New Hampshire but that it was, in fact, being so used.

Additionally, we conclude that Armslist was not merely a passive bystander to the website being so used. See Motus, 23 F.4th at 124 ("[A] finding of purposeful availment necessarily requires more than the unilateral activities of third parties." (quoting Chen, 956 F.3d at 59)). It had "voluntarily" taken an affirmative step to increase the likelihood that a firearm being offered for sale in New Hampshire would be purchased in that same state. It had implemented its geographic-filtering mechanism to enable would-be buyers to find firearms being offered for sale in the state and thus make a deal there and not in some other place. In fact, as discussed above, the Stokingers' evidence about the FAQ page on Armslist.com supportably shows that Armslist expressly advised would-be sellers to use the geographic label that matched where they, and the firearm that they were offering for sale, were "physically located."

True, the existence of the "New Hampshire" listings on Armslist.com does not by itself show that the firearms listed for sale in New Hampshire were ultimately purchased in that state.

The purchase would only occur there if someone sought out one of the "New Hampshire" listings and then consummated the deal in New Hampshire. But the evidence of those listings does make a prima facie showing that Armslist knew that there were thousands of "New Hampshire" listings on its website each year, starting in 2018. And so, those listings, when considered alongside the features of the website's design that the Stokingers highlight, make a prima facie case that Armslist intentionally facilitated the culmination of sales in New Hampshire as opposed to any other place that the sellers, if left wholly to their own devices, may have chosen to close the deal.

We note, too, that through the thousands of "New Hampshire" listings posted on Armslist.com, Armslist was directly profiting from the advertising that it permitted on the website. By including the geographic-filtering mechanism described above, "it could be inferred," as the District Court found, that Armslist was thereby generating "at least some amount of . . . advertising revenue from the New Hampshire listings," which were posted by sellers looking to transact with New Hampshire buyers.

In other words, we agree with the Stokingers that they have made a prima facie case, based on the evidence of the volume of "New Hampshire" listings from 2018 on, that Armslist was not merely intent on facilitating "local" transactions in the abstract but that it was knowingly intent on facilitating firearm

transactions in New Hampshire. And while those transactions would only occur there if other parties took action, Armslist cannot be considered a mere passive bystander given the affirmative step that it had taken with the express aim of increasing the likelihood that a firearm listing made by a person who, alongside their firearm, was located in New Hampshire would result in a firearm being sold in New Hampshire rather than anywhere else. See Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 9 (1st Cir. 2018) (stating that the defendant "knew that it was serving U.S. customers and took no steps to limit its website's reach or block its use by U.S. customers" such that it could not "now claim that its contact with the United States was involuntary"); cf. Walden v. Fiore, 571 U.S. 277, 286 (2014) ("To be sure, a defendant's contacts with the forum [s]tate may be intertwined with his transactions or interactions with the plaintiff or other parties.").

None of this is to say that Armslist was trying, at any time, to facilitate firearms sales only in New Hampshire. But a defendant who deliberately targets its behavior toward one state does not cease doing so just because it also chooses to deliberately target its behavior toward other states. Cf. Int'l Shoe, 326 U.S. at 319 ("But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state.").

- 27 -

Thus, we conclude that the Stokingers have made a prima facie case that Armslist deliberately targeted its behavior toward New Hampshire once the evidence that there were thousands of listings sporting "New Hampshire" geographic tags from 2018 on is taken into account.

**4.**

Armslist does insist otherwise because, in its view, "[the First Circuit] and its fellow circuit courts have repeatedly denied specific jurisdiction based on similar (and even more robust) geographic filtering functions, ubiquitous in modern websites."  But the cases on which Armslist relies are distinguishable given that it, based on the evidence of the "New Hampshire" listings from 2018 on, reasonably should have known that its website was being used to list guns for sale in New Hampshire specifically.

Armslist primarily relies on <u>Fidrych</u> v. <u>Marriott International, Inc.</u>, 952 F.3d 124 (4th Cir. 2020).  There, two South Carolina residents sued an international hotel chain in South Carolina over injuries sustained at one of the chain's affiliated hotels in Milan, Italy.  <u>Id.</u> at 128.  The couple asserted that the court had specific jurisdiction over the defendant because the plaintiffs booked their hotel reservation through the defendant's booking website while they were in South Carolina and because they

used that website's "drop-down menu to select the place of their residence" (South Carolina). Id. at 129, 140.

The Fourth Circuit concluded that "the fact that the website include[d] South Carolina as an option in the drop-down menu used by customers to select their state of residence when making reservations" did not suffice to demonstrate purposeful availment in South Carolina. Id. at 142-43. It explained that "the list of options confirm[ed] that the website was accessible to all but targeted at no one in particular" and that, as a result, "the drop-down menus that include[d] South Carolina simply [did] nothing to strengthen the jurisdictionally relevant connections between [the hotel chain] and South Carolina." Id. at 143 (emphasis added). Rather, the court held, the drop-down menu merely demonstrated "that [the hotel chain] was willing to accept reservations from South Carolina residents," not that it "was targeting South Carolina residents through its website." Id. at 142-43.

Unlike the plaintiffs in Fidrych, however, the Stokingers, insofar as they rely on the evidence of the "New Hampshire" listings from 2018 on, do not rely solely on evidence that the website was accessible to prospective purchasers in the forum state or that the website was merely "willing to accept" listings from New Hampshire residents. Id. Therefore, Fidrych did not confront evidence that comparably indicates -- as the

evidence of the "New Hampshire listings" does when considered in conjunction with the website-design and advertising evidence -- that the defendant was specifically intent on its website leading to forum-state activity. Id. at 129.

Armslist's reliance on NexLearn, LLC v. Allen Interactions, Inc, 859 F.3d 1371 (Fed. Cir. 2017), is also unpersuasive. In that case, a Kansas plaintiff, alleging, among other things, patent infringement, sued a Minnesota company in the District of Kansas. Id. at 1373-74. The plaintiff asserted that the defendant was subject to personal jurisdiction in Kansas, in part, because the defendant-company's website "specifically targeted Kansas residents by including Kansas in the address selector's dropdown menu on its . . . website." Id. at 1374. The Federal Circuit disagreed, however, because, although the defendant-company's "address selector may [have] indicate[d] its amenability to selling [software] to Kansas residents, . . . it [did] not establish minimum contacts arising out of or related to the infringement claim." Id. at 1378. The court then went on to note that "[w]hile a Kansas resident could purchase [software] from [the defendant's] website, what [was] missing [was] any evidence that such a sale [had] taken place . . . . [The plaintiff] [did] not even allege that any Kansas resident has accessed [the defendant's] website." Id.

Here, by contrast, once the evidence that there were thousands of "New Hampshire" listings is considered, it cannot be said that there is "missing . . . evidence" that the website was being used by New Hampshire residents to facilitate sales in that state. Indeed, the evidence from 2018 on speaks to more than Armslist being "amenab[le]," id., to serving New Hampshire residents who wished to complete sales there. It suffices to make the prima facie case that Armslist knew that its website so served them.

Therefore, nothing in NexLearn's analysis is at odds with our conclusion about purposeful availment here. See id. As such, we do not see how NexLearn supports Armslist's position that the Stokingers have not established purposeful availment once we account for the evidence that there were thousands of "New Hampshire" listings on Armslist.com each year from 2018 on. See id. (noting that "there [was] no evidence that [the defendant's] website facilitated the making, using, offering, or selling of [software] in Kansas in order to connect [the defendant's] website with [the plaintiff's] patent infringement claim." (emphasis added)).

Finally, neither Rosenthal, 101 F.4th 90, nor Chen, 956 F.3d 45, from our own circuit bolsters Armslist's argument. In those cases, we held merely that a "broad and generic degree of foreseeability" predicated on the possibility that a user might

access the defendant's website in the forum state is "insufficient, standing alone, to rise to the level of purposeful availment with respect to [the plaintiff's] claims." Chen, 956 F.3d at 60 (emphasis added); see Rosenthal, 101 F.4th at 97 (relying on Chen in holding that the plaintiff had failed to establish that the defendant had "intentionally target[ed] users in [the forum state]"). Here by contrast, the evidence of the "New Hampshire" listings from 2018 on, when considered alongside the rest of the Stokingers' evidence, demonstrates that there was something "more" than mere access. Motus, 23 F.4th at 125. It demonstrates that Armslist "knew that it was targeting" New Hampshire. Rosenthal, 101 F.4th at 97.[5]

## C.

For these reasons, although we agree with the District Court that the Stokingers failed to make a prima facie case that

---

[5] Armslist also relies on Hasson v. FullStory, Inc., 114 F.4th 181 (3rd Cir. 2024), which like Rosenthal, involved a defendant that was allegedly tracking user conduct on its website in an impermissible manner. In relevant part, Hasson determined that the plaintiff there had not established purposeful availment under the Calder "effects test," see id. at 192, which the Third Circuit determined had "distinct requirements" from the "traditional test," id. at 189. No party contends that the Calder "effects test" applies here, however, and Hasson made clear that under the "traditional test" "there is no doubt that [the defendant] purposefully availed itself of the [forum state's] market," in part, because the defendant "conducts business with [forum] residents to sell pizza and other products via its website." Id. at 193 (citation modified). We thus do not see how Hasson supports Armslist's position.

Armslist purposefully availed itself of the protections of New Hampshire's laws based on their evidence of contacts up to 2016, we disagree with the District Court that they also failed to do so when we take account of their evidence of the thousands of "New Hampshire" listings from 2018 on.  That said, our conclusion on that score does not necessarily help the Stokingers in their broader effort to establish specific jurisdiction.  They still must succeed in showing that the contacts that establish purposeful availment are related to their claims.  See Cappello, 89 F.4th at 244.  And it is not evident how New Hampshire-based firearm listings posted on Armslist.com years after the sale of the weapon alleged to have been used to shoot Officer Stokinger could suffice to satisfy the relatedness requirement.  See Harlow, 432 F.3d at 62.

Nonetheless, as we have explained, the District Court did not address the relatedness question.  It instead determined that, even when considered alongside the Stokingers' other evidence, the evidence of the "New Hampshire" listings from 2018 on was "not sufficient to establish purposeful availment in any event."  We thus leave the questions concerning the relatedness requirement for the District Court to address on remand in the first instance, see Yan, 973 F.3d at 39, just as we also leave the questions concerning the final prong of the test for specific jurisdiction, the reasonableness requirement.

There is one loose end to tie up. The Stokingers challenge, in the alternative, the District Court's judgment of dismissal of the Stokingers' claims for lack of personal jurisdiction on the ground that the District Court erred in denying their request for jurisdictional discovery. That ground for challenging the dismissal of the claims could be relevant to the case's disposition on remand if the District Court were to conclude that, in the end, the Stokingers have not made out a prima facie showing of specific jurisdiction even though they have made a prima facie case of purposeful availment based on the evidence of the "New Hampshire" listings from 2018 on. So, we must address this alternative ground for overturning the District Court's judgment of dismissal. Nonetheless, we conclude, for the reasons set forth below, that there is no merit to this ground for disturbing that judgment.

**A.**

We review a denial of a request for jurisdictional discovery for abuse of discretion. See Motus, 23 F.4th at 128. "This standard is deferential, and an order denying jurisdictional discovery will be overturned 'only upon a clear showing' that 'the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party.'" Id. (quoting

United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 626 (1st Cir. 2001)).

The District Court denied the Stokingers' request for jurisdictional discovery for several reasons, including that "[t]he [Stokingers'] request for jurisdictional discovery . . . [did] not identify the discovery they [sought] [nor] explain how it would confer jurisdiction." It emphasized, as to this reason for denying the request, that the Stokingers filed no motion for jurisdictional discovery, styled as such, and instead merely included a request for such discovery in their opposition to Armslist's motion to dismiss for lack of personal jurisdiction. It then added that, in so requesting, the Stokingers provided no detail as to why they needed that discovery. They instead merely asserted that they "should be 'entitled to probe Armslist's assertions and obtain updated evidence'" without specification.

The District Court acknowledged that, at the hearing on the motion to dismiss, the Stokingers "provided . . . some additional substance to their request . . . where they clarified that they were seeking discovery on Armslist's post-tort contacts with New Hampshire." But it nevertheless explained that it found the request, even as clarified, devoid of "'factual allegations suggesting with reasonable particularity the possible existence of contacts' sufficient to confer jurisdiction." (Quoting Eurofins

<u>Pharma U.S. Holdings</u> v. <u>BioAlliance Pharma SA</u>, 623 F.3d 147, 157 (3d Cir. 2010).)

**B.**

The Stokingers do not dispute that they first set forth their request for jurisdictional discovery in their opposition to Armslist's motion to dismiss for lack of personal jurisdiction and, so, not in any independent motion seeking such discovery. Nor do they suggest that the portion of that filing containing the request itself identified the specific facts sought to be unearthed through jurisdictional discovery. We also do not see how they could so suggest, given that, in that portion of that filing, the Stokingers, instead of presenting facts which would support a finding of jurisdiction, merely took issue with the facts presented by Armslist. <u>Negrón-Torres</u>, 478 F.3d at 27 ("It is also incumbent upon the plaintiff to present facts to the court which show why jurisdiction would be found if discovery were permitted." (citation modified)).

We note as well that the Stokingers do not suggest that when they clarified their request for jurisdictional discovery at the hearing on the motion to dismiss, as the District Court highlighted, they provided the missing detail. And, again, given what the record shows, we do not see how the Stokingers could make such a suggestion.

- 36 -

Therefore, the Stokingers stake their challenge to the District Court's denial of their request entirely on two distinct exchanges that also occurred at that hearing but were otherwise unconnected to the clarification that the District Court referenced. Specifically, the Stokingers point out that when the District Court asked their attorney whether the geographic-filtering drop-down menu "was used in connection with this particular sale," their counsel replied that it was "one of the things [they would] like to find out from discovery." They also point out that when the District Court asked their attorney if the Stokingers had "data about how many New Hampshire firearm sellers had . . . listings on the site to sell weapons in the . . . year of [the allegedly tortious conduct] and the year prior," counsel replied, "It's certainly something [they would] like to know."

The District Court, however, did not understand either of those responses to be attempts to flesh out the Stokingers' otherwise bare-bones request for jurisdictional discovery. And we cannot see how it was an abuse of discretion, see Motus, 23 F.4th at 128, for the District Court to have understood those responses as it did.

The Stokingers chose not to proceed by filing a motion spelling out their request for jurisdictional discovery. They instead chose to make their request in their opposition to the

- 37 -

motion to dismiss. They further chose to proceed by making their request in a most skeletal manner. Moreover, elsewhere at the hearing on that motion, they chose to emphasize their interest in obtaining discovery regarding what the District Court understandably thought were actions Armslist and others had taken after 2016.[6] We thus cannot say that the District Court acted in any way improperly in denying the Stokingers' request for jurisdictional discovery.

## IV.

For the foregoing reasons, we **affirm** the District Court's grant of the motion to dismiss for lack of personal jurisdiction in part, **vacate** that decision in part, **affirm** the District Court's denial of the motion for jurisdictional discovery, and **remand** for further proceedings consistent with this opinion. The parties shall bear their own costs.

---

[6] Even if counsel's statements at the hearing on the motion to dismiss constituted a permissible oral motion under Fed. R. Civ. P. 7(b)(1)(A), the District Court did not abuse its discretion in denying such a motion because, for the reasons we have explained, we conclude that counsel did not "state with particularity the grounds for seeking the order," Fed. R. Civ. P. 7(b)(1)(B).